**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

LATIN AMERICAN MUSIC CO., INC.,
ET AL.,

     Plaintiffs,

        v.

THE ARCHDIOCESE OF SAN JUAN OF THE
ROMAN CATHOLIC AND APOSTOLIC
CHURCH, ET AL.,

     Defendants.

CIVIL NOS. 96-2312 (PG)
          97-2356 (PG)
          97-2875 (PG)
          98-1597 (PG)
          00-1618 (PG)

## OPINION AND ORDER

    This long-enduring consolidated litigation concerns the ownership of copyrights in 525 classics of Latin-American song. Following years of deadlock, the Court referred most of the claims to a Special Master for a Report and Recommendation, which was issued on May 13, 2004. (Docket No. 334)[1] Consideration of the same has been delayed, however, by the LAMCO Parties'[2] disregard for this Court's deadlines, their failure to abide by production orders and their as yet unexcused refusal to pay the Special Master's compensation.

    The Court issued an ultimatum on October 13, 2004, allowing the LAMCO Parties a final one-month extension to comply with the Court's standing Orders or face dismissal of their claims, counterclaims and affirmative defenses. (Docket No. 343 at 2). It has now been nine months since that Order, and nine years since they incited this

---

    [1] Unless otherwise designated, all "Docket No." citations pertain to the Docket of the action identified as Cv. No. 96-2312 (PG).

    [2] Latin-American Music Company, Inc. ("LAMCO"), Asociacion de Compositores y Editores de Musica Latino Americana, Inc. ("ACEMLA"), and Luis Raul Bernard, the majority shareholder of both LAMCO and ACEMLA, are collectively referred to herein as the "LAMCO Parties."

litigation, but still the LAMCO Parties are temporizing, and the Court has yet to see any significant attempt at compliance.

The Court accordingly proceeds herein to impose the sanction of dismissal and consider the Special Master's Report and Recommendation, as well as his request for discharge.  The Court also considers the Peer Parties'[3] omnibus motion for dismissal of the LAMCO Parties' claims, counterclaims and affirmative defenses, adoption of the Report and request for a hearing on "minor modifications" thereto, summary judgment on their infringement claims, as well as their request for attorney fees and costs.  (Docket No. 346)

## I. Background

### A. The Initial Consolidations

When the total number of songs here in suit eventually swelled to over 500, it was observed that altogether they "present almost every conceivable permutation and combination of circumstances relating to the recordation and renewal provisions of the 1909 and 1976 Copyright Acts." (Docket No. 334 at 5 n.5)

This consolidated litigation originated in October 1996 when the Latin American Music Company, Inc. ("LAMCO") and the Asociacion de Compositores y Editores de Musica Latinoamericana ("ACEMLA") brought suit against various local radio broadcasters[4] alleging copyright infringement

---

[3]  Collectively referred to herein as the "Peer Parties" are Peer International Corporation, Peer International Corporation of Puerto Rico, Southern Music Publishing Company, Inc., Peermusic Ltd., Sonido, Inc. d/b/a FAF Publishing, EMI Catalogue Partnership, EMI April Music, Inc., and Broadcast Music Inc.

[4]  The defendants in that action are the Archdiocese of San Juan of the Roman Catholic & Apostolic Church d/b/a WORO-FM, also known as Radio ORO, also known as AM-81; Isabela Broadcasting Co. d/b/a WKSA-FM Radio; Kelly Broadcasting System, Corp., d/b/a WNIK-FM, d/b/a WNIK-AM; Ramon Rodriguez & Associates, Inc., d/b/a WCFI-FM; also known as Radio Cofresi; Bestov Broadcasting, d/b/a WIAC-AM, d/b/a WIAC-FM, also known as Sistema 102; HQ-FM 103, Inc., d/b/a WCHQ-FM also known as HQ-FM; Aerco Broadcasting Corp., d/b/a WQBS-AM, also known as Cadena QBS; Tommy Muniz Productions, Inc., d/b/a WLUZ-AM, also known as Radio Luz; VI-MAN Broadcast System, Corp., d/b/a WEGA-AM, also known as Radio Las Vegas; and ABG Realty & Investment Corp., d/b/a WRSJ-AM, also known as Radio San Juan.  Suit was also

of 50 songs[5] under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., as well as a tort claim and an unjust enrichment claim under Puerto Rico law.  The action was identified as Cv. No. 96-2312 (PG).

Several of the radio broadcasters filed a counterclaim, alleging an antitrust violation under Section 2 of the Sherman Act and Section 3 of the Clayton Act.[6]  It was their position that LAMCO and ACEMLA instigated the subject litigation to force the defendant radio broadcasters into an overpriced tying agreement.  (Docket No. 17, filed January 7, 1997)

Some of the radio stations[7] also filed a third-party complaint against the American Society of Composers, Authors, and Publishers ("ASCAP"), a performing rights society which acquires and sublicenses the rights to musical compositions.  The third-party plaintiff radio stations claimed a right of indemnity against ASCAP for any alleged copyright infringement as a result of the performance of songs sublisenced from

brought against Sensacion Broadcasting Corporation, d/b/a WSAN-FM, also known as Radio Sensacion, against whom a permanent injunction was entered by way of a sealed agreed final judgment.  (Docket No. 29, filed March 24, 1997)

[5] Technically, LAMCO and ACEMLA listed 53 songs in Exhibit A of their complaint; three of these were duplicated.  ("Celos Sin Motivo," "Un Jibaro Terminao," and "Niegalo.")  In addition, although they did not explicitly claim ownership in the complaint, they alleged infringement of 11 other songs, listing them in Exhibit B to their complaint.  These were "Brujeria," "Todo Normal," "Dos Pajaritos," "Jibara Alaguena," "Campina Campesina," "En La Vida Del Artista," "El Que Desgraciado Nace," "Que Te Pedi," "Sollozo," "Declaracion de Amor" and "Las Cadenas."  Of these "Exhibit B" songs, the LAMCO Parties moved for summary judgment as to three ("Brujeria," "Todo Normal," and "Dos Pajaritos"), and two other songs ("Sollozo" and apparently "Las Cadenas" under the name "Las Cadenas del 1800"), were claimed in the countersuit by the Peer Parties, identified as Cv. No. 97-2875 (PG).  The other 6 songs mentioned in Exhibit B have never been mentioned again by any party.

[6] The counterclaim was filed by Isabela Broadcasting, Kelly Broadcasting, Bestov Broadcasting, Tommy Muniz Prod., and VI-MAN Broadcast System.  (Docket No. 17)  ABG Realty & Investment filed a separate answer, but did not join the counterclaim.  (Docket No. 18)  The Archdiocese of San Juan also filed a separate answer and its own counterclaim under Section 2 of the Sherman Act and Section 3 of the Clayton Act.  (Docket No. 22, filed February 25,1997)  Aerco Broadcasting and Ramon Rodriguez & Associates also filed a separate answers.  (Docket No. 32, filed May 12, 1997, and Docket No. 36, filed May 27, 1997)

[7] Isabela Broadcasting, Kelly Broadcasting, Bestov Broadcasting, Aerco Broadcasting, and VI-MAN Broadcast filed the initial third party complaint against ASCAP.  (Docket No. 40, filed June 9, 1997)

ASCAP.  (Docket No. 33)  In addition, the Archdiocese of San Juan filed its own third-party complaint against both ASCAP and Broadcast Music Incorporated ("BMI"), also a performing rights society, claiming a similar right of indemnification.  (Docket No. 43, filed June 25, 1997)

In response to the Archdiocese's third-party complaint, BMI and Peer International Corporation ("Peer"), filed a joint motion requesting an extension of time to answer, bring in all additional parties and file cross-claims.  (Docket No. 45 at 2, filed July 16, 1997)  Peer is the multi-national publishing corporation which granted both BMI and ASCAP non-exclusive rights to issue public performance licenses for the works in its catalogue, several of which overlapped with works claimed by LAMCO and ACEMLA.

In September 1997, another group of radio stations[8] brought a separate action for declaratory judgment, identified as Cv. No. 97-2356 (PG), against LAMCO, ACEMLA and ASCAP to clarify ownership of the songs at issue in Cv. No. 96-2312 (PG).[9]

A third action, identified as Cv. No. 97-2875 (PG), was brought by Peer and its affiliates[10] in December of 1997 against LAMCO and ACEMLA, as well as LAMCO and ACEMLA's majority shareholder Luis Raul Bernard.

---

[8] Turabo Radio Corp., ARSO Radio Corporation, WNEL-AM  also known as Radio Tiempo; WTVA-FM  also known as Salsoul; El Mundo Broadcasting Corp. WKAQ-FM; Prime Media Broadcasting Group, Inc.; WXNT-FM also known as Z-93.

[9] Due to an oversight, the original complaint requested declaratory judgment for all the songs listed in "Exhibit A," apparently attempting to incorporate by reference the "Exhibit A" from the Cv. No. 96-2312 complaint, but no exhibits denominated as such were appended to the complaint.  The only song for which declaratory judgment was actually requested was "Honra y Cultura" by L.C. Tirado. When the complaint was amended, the "Exhibit A" largely conformed to the "Exhibit A" in the Cv. No. 96-2312 complaint, but plaintiffs failed to include a prayer for relief as to "Honra y Cultura," although all the parties have proceeded as if such relief had been requested.  The Exhibit A filed in Cv. No. 97-2356 (PG) included 51 songs, deleting two of the duplications in the "Exhibit A" of Cv. No. 96-2312, but still duplicating one song, "Celos Sin Motivos."

[10] Peer International Corporation of Puerto Rico, Southern Music Publishing Co., Inc., Peermusic Ltd., Sonido, Inc., d/b/a FAF Publishing, Emi Catalogue Partnership, Emi April Music, Inc., and Broadcast Music, Inc. ("BMI").

The Peer Parties submitted that the LAMCO Parties had illegally licensed the Peer Parties' compositions, further claiming that the LAMCO Parties had threatened and commenced copyright infringement litigation against broadcasters in Puerto Rico who play works which in fact belong to the Peer Parties.  All told, the Peer Parties sought infringement damages from the LAMCO Parties for the unauthorized public performance of 468 songs.[11]

Some of the radio stations[12] literally followed suit with a fourth action identified as Cv. No. 98-1597 (JAF), against both the Peer Parties and the LAMCO Parties, seeking declaratory judgment on the ownership of those 468 songs.  At that point, the Court had before it four different complaints with coinciding requests for a determination of copyright ownership of 525 songs.

On motions to consolidate, the Court determined that the radio stations' overlapping actions for declaratory judgment in Cv. Nos. 97-2356 (PG) and 98-1597 (JAF) merited consolidation with the lead case of Cv. No. 96-2312 (PG).  The Court determined that such consolidation was warranted because the same parties were involved in the actions, the opposition had not shown any demonstrable prejudice flowing from the consolidation, and finally, consolidation would avoid unnecessary costs and delays.  (Docket Nos. 86 and 89)

However, while Cv. No. 97-2875 (SEC) was subsequently transferred to this Court's docket, the Peer Parties' motion to consolidate their infringement suit with the radio broadcasters' cases remained pending.  (Docket No. 103)

---

[11] They also sought declaratory judgment regarding ownership of 2 songs.

[12] Turabo Radio Corp., also known as Radio Tiempo, WTVA-FM, also known as Salsoul, El Mundo Broadcasting Corp. WKAQ-FM, Prime Media Broadcasting Group, Inc., also known as Z-93.

## B. The Summary Judgment Motions

On October 2, 1998, the Court held a status conference where it issued a stay of discovery as to the radio stations, finding that resolution of the ownership claims must necessarily antecede resolution of the declaratory judgment and infringement claims.   Third-party defendant ASCAP claimed sublicensing rights to five of the songs at issue in both Cv. No. 96-2312 and 97-2875.  ASCAP was the first party to move for summary judgment and a hearing on the ownership of the 5 songs was set for December 17, 1998.

Just before the hearing was to take place, ASCAP requested a continuation, reporting that it would be possible to resolve the ownership issues by way of summary judgment and requesting until May 1, 1999 to file such motion.  (Docket No. 92)  The LAMCO Parties agreed and further stated that they would file a motion for partial summary judgment on ownership of the undisputed song titles.   (Docket No. 93)   That deadline was later extended to June 15, 1999 (Docket No. 96), on which date the LAMCO Parties and ASCAP filed their cross-motions for summary judgment regarding the 5 songs.  (Docket Nos. 97 and 98)

The Peer Parties also moved for summary judgment regarding ownership the 468 compositions on July 9, 1999.  As responses and stipulated extensions began to trickle in regarding the 5 songs, instead of opposing the Peer Parties' motion or at least filing a request for extension of time, LAMCO requested that the Court stay the Peer Parties' motion.  (Docket No. 105, filed July 23, 1999)  LAMCO argued that resolving ownership of the 5 songs required a foray into "uncharted territories" and that the Peer Parties' motions should be stayed pending the Court's determination of the 5 songs.  Id. at 2.

However, the Peer Parties would not hear of a stay, asserting that they would be severely prejudiced by a postponement of the determination. They submitted that although they had agreed to postpone discovery in

their suit pending a ruling on the 5 songs, they had only agreed on the belief that ownership of the 5 songs would be resolved at a one-day hearing in December of the previous year.  At the time the Peer Parties filed their response to LAMCO's motion to stay, 9 months had elapsed since the hearing was postponed, and LAMCO and ASCAP, by mutual agreement, had yet to file their opposition to each other's motion for summary judgment.  <u>See</u> Docket No. 106 at 2-3.

LAMCO and ASCAP filed their respective oppositions in September. (Docket Nos. 109 and 110)  On November 23, 1999, the Peer Parties filed a "Motion for Consideration" requesting the Court not defer ruling upon its summary judgment motion until it resolved the matter of the 5 songs. (Docket No. 111)  The LAMCO Parties responded by arguing that shifting the focus to the Peer Parties' 468-songs motion would affect the orderly disposition of the consolidated cases and that by filing for summary judgment, Peer was attempting to circumvent what they characterized as "the Court's refusal" to consolidate the Peer case with the others. (Docket No. 112 at 4)

At a status conference for all four cases on March 30, 2000, the Court ordered LAMCO to respond by June 30, 2000 to the Peer Parties' motion for summary judgment.  The Court also set a hearing for July 20, 2000 on all pending summary judgment motions in the four cases.  (Docket No. 113)  LAMCO failed to meet that deadline, and about a month before the hearing, counsel for the LAMCO Parties moved to withdraw, requesting a 30-day extension for the LAMCO Parties to obtain new representation.[13] (Docket No. 114, filed June 12, 2000)  The Peer Parties filed written opposition, arguing that the motion was yet another dilatory tactic (Docket No. 115), and the Court summarily denied the motion for

---

[13] On May 19, 2000, a fifth action, for breach of contract, identified as Cv. No. 00-1618 (HL), was filed by ACEMLA against the Catholic University Association, also known as WEUC-1240 AM, also known as WEUC-88.9 FM.  The radio station interposed a counterclaim and moved for consolidation with Cv. No. 96-2312, which request was granted on January 8, 2001.

withdrawal.  (Docket No. 118)  Three days before the hearing, the LAMCO Parties moved to convert it to a status conference, requesting a 60-day extension to submit its opposition to the Peer Parties' motion for summary judgment.  (Docket No. 121)

The hearing was held as scheduled on July 20, 2000, and the LAMCO Parties were unprepared.  The Court heard oral arguments on the motions, and granted the Peer Parties' oral motion for consolidation, explicitly consolidating the cases.  (Docket No. 123, Hr. Tr. at 27)  In addition, the Court reserved  decision on whether LAMCO would be permitted to oppose the Peer Parties' 468-song motion for summary judgment.

Without leave, the LAMCO Parties' new counsel[14] filed opposition to the Peer Parties' motion on September 29, 2000, nearly eighteen months after the motion for summary judgment was filed.  (Docket No. 131)  It was at this point that the LAMCO Parties admitted they had accidentally left in their catalogue nearly 200 songs belonging to the Peer Parties. The LAMCO Parties cross-moved, however, for summary judgment on the copyrights to the remaining songs.

The Court determined that the LAMCO Parties' conduct leading up to the hearing could not go unsanctioned.  Following a careful consideration of the issues, the Court granted the Peer Parties' request for fees and expenses resulting from the postponement of the hearing, but considered the LAMCO Parties' opposition.  (Docket No. 146, filed January 12, 2001)

Another hearing on the summary judgment motions was held on February 2, 2001.  (Docket No. 152)  That hearing had barely concluded when the LAMCO Parties filed a motion for partial summary judgment on February 28, 2001, regarding 36 songs largely from the initial

_____

[14] The Court subsequently granted the motion to withdraw on June 5, 2003. (Docket No. 287)

complaint,[15] which they claimed were uncontested.  (Docket No. 154)[16] Among the oppositions filed, the Peer Parties noted that not all of the songs were uncontested, and further pointed out registration deficiencies, not to mention the LAMCO Parties' failure to evidence their infringement claims.  (Docket No. 216).

An Opinion and Order resolving ownership of the 5 songs and the related infringement claims issued on March 21, 2001. (Docket No. 158 amended *nunc pro tunc* at Docket No. 172)  The Court held that ASCAP had acquired the right to sublicense performance rights to four of the songs: "Caballo Viejo" "Patacon Pisa'o," "Una Tercera Persona" and "Te Sigo Queriendo."  The infringement claims involving these four songs were accordingly dismissed with prejudice.  With respect to the fifth song, "Ojos Chinos," the Court held that although the LAMCO Parties had priority based upon a non-exclusive licensing agreement, such an agreement did not confer the right to pursue infringement claims, and the same were also dismissed.  The LAMCO Parties' repeated requests for reconsideration were all denied, and their appeal was dismissed for lack of jurisdiction.

**C. Appointment of the Special Master**

In light of the tremendous amount of resources that the determinations regarding only 5 of the songs absorbed, and given the exceeding complexity of the issues, the Court announced that in all

---

[15] The exception was the song "Honra y Cultura" which was placed in issue by the radio stations.  See *supra* Note 9.

[16] Inexplicably, however, they failed to request summary judgment regarding several songs mentioned in Exhibit A of their original complaint, not to mention several songs mentioned in the overlooked Exhibit B.  The Exhibit A songs not mentioned again are "Lo Ajeno Se Deja Quieto," "Prendido En Tu Recuerdo," "Madre Santa," "Mejor Que Un Adinerado," "Para Tus Ojos Negros" and "Ultima Carcajada Cumbancha."  The Exhibit B songs are listed supra in Note XXX.

probability it would appoint a master. (Docket No. 205, filed July 6, 2001)

Following two motions for extension of time (Docket Nos. 199 and 200), the LAMCO Parties opposed the appointment of a special master, arguing that the issues were not complicated, that issues of law are not subject to referral and that the Court would be unable to find a special master who was not biased against the LAMCO Parties. (Docket Nos. 201 and 210)

On August 14, 2001, the Court issued an Opinion and Order regarding the Peer Parties' motion for summary judgment, and the LAMCO Parties' cross-motion. The Court reviewed the claims and defenses of the parties, and found that the Peer Parties were entitled to a presumption of ownership. The Court noted the LAMCO Parties' admission that they had left in their catalogue by accident nearly two hundred songs in which they had no interest, concluding that in all likelihood such acts qualified as infringement. However, the Court did not issue judgment, instead laying the groundwork for the Special Master to make recommendations regarding the Peer Parties' ownership of the copyrights and the claims of infringement. (Docket No. 212)

Later in August, ASCAP filed a cross-motion for summary judgment on the LAMCO Parties' 36-songs summary judgment motion, claiming licensing rights to two of the songs. (Docket No. 214, filed August 23, 2001) In addition, the Peer Parties filed their own cross-motion for summary judgment, submitting that they had priority over several songs and pointing out deficiencies in the LAMCO Parties' claims even as to those songs in which the Peer Parties had no interest. (Docket No. 216, filed August 24, 2001)

On March 6, 2003, the Court appointed Morton D. Goldberg as Special Master. (Docket No. 267, amended *nunc pro tunc* at Docket No. 277) The Order of Reference instructed the Special Master to issue a Report and Recommendation regarding, inter alia, ownership of the songs claimed by

Peer in Cv. No. 97-2875 (PG) and the accompanying infringement claims. The LAMCO Parties and the Peer Parties were each ordered to pay 50% of the Special Master's compensation.  The parties were also instructed that discovery matters should now be addressed to the Special Master.  (Docket No. 271)

To date, the LAMCO Parties have still failed to post bond, claiming that they lack the wherewithal to pay.  Nevertheless, the Special Master proceeded to evaluate the ownership claims of the Peer and LAMCO Parties. He circulated a draft Report and Recommendation on March 9, 2004.[17]  The final Report and Recommendation was issued on May 10, 2004, with recommendations regarding the ownership of the 468 songs claimed by the Peer Parties.  He deferred issuing recommendations on the infringement claims, pending resolution of the ownership issues.

**D. The LAMCO Parties' Indifference to Orders**

To evaluate the LAMCO Parties' claims of inability to pay the Special Master's compensation, the Court ordered the majority shareholder of LAMCO and ACEMLA, Mr. Raul Bernard, to file audited financial statements by June 1st, specifying that no copies of the Report and Recommendation would be issued to parties delinquent in payments. (Docket No. 330, filed May 7, 2004)

While the Peer Parties filed an objection to the Report and Recommendation on May 28, 2004 (Docket No. 335), the LAMCO Parties requested an extension of time to file the audited statements on June 1st.  (Docket No. 336)  The motion was granted (Docket No. 337), and the LAMCO Parties filed a statement on July 19, 2004.  (Docket No. 339) Notwithstanding the extension of time, the LAMCO Parties failed to

---

[17] The Special Master stated in his final Report that he received copies from the LAMCO Parties of hundreds of registration certificates after the Draft Report was substantially completed, and that he did not review the information.  (Docket No. 334 at 8 n.10)

provide the Court with an accurate picture of their financial position because the reports submitted were not current.

At a status conference on October 13, 2004, plaintiffs were granted 30 days to post bond or face sanctions including dismissal of the complaints, counterclaims and affirmative defenses.   (Docket No. 343) To break the impasse, however, the Court ordered that a copy of the Report and Recommendation be extended to the LAMCO Parties regardless of whether they posted bond.  Id.

Despite the Court's crystalline Orders, the LAMCO Parties did nothing.  They did not post bond, they did not file objections, they did not even renew their claim of inability to pay.  The Special Master orally requested that he be discharged on November 30, and the Docket remained essentially silent until December 3, when the Peer Parties filed their omnibus motion, requesting dismissal of the LAMCO Parties' claims, counterclaims and affirmative defenses, adoption of the Report, a hearing on "minor modifications" thereto, and summary judgment on their infringement claims, as well as attorney fees and costs.  (Docket No. 346)

The LAMCO Parties responded, as had become routine, with a motion for extension of time (Docket No. 347), which was opposed by the Peer Parties.  (Docket No. 348)  The LAMCO Parties' objections, filed without leave of Court, were tendered on December 20, 2004.  It was not until February of 2005 that the LAMCO Parties filed a second set of financial statements, also materially deficient.  (Docket No. 359)

## II. Discussion

The Court proceeds to impose upon the LAMCO Parties the sanction of dismissal for failure to comply with its Orders.  Consideration follows of the Special Master's requests for payment and discharge, the Report and Recommendation and the objections thereto, the Peer Parties' motion

for summary judgment on their infringement claims, and, finally, their request for attorney fees and costs.

## A. Dismissal Sanction

Any analysis in the area of sanctions must begin with the unarguable proposition that courts cannot effectively administer justice unless they are accorded the right to establish orderly processes and manage their own affairs. See Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)); HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 916 (1st Cir. 1988) ("[c]ourts cannot function if litigants may, with impunity, disobey lawful orders").  The authority to impose sanctions, including the sanction of dismissal, is a necessary component of the Court's ability to function. Young, 330 F.3d at 81; Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962)(the sanction of dismissal is an important part of the armamentarium that the law makes available to trial courts). Moreover, the Federal Rules of Civil Procedure reinforce and augment the inherent power of district courts to dismiss cases for disregard of judicial orders.  Young, 330 F.3d at 81; Fed.R.Civ.P. 37(b), 41(b).

While the sanction of dismissal should not be employed unless a plaintiff's misconduct is extreme, disobedience of court orders may constitute extreme misconduct.  Young, 330 F.3d at 81; Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002); Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987).  Nevertheless, dismissal should not be viewed as a sanction of first resort, and in imposing the appropriate penalty a court should consider the totality of events, its need to maintain order and prevent undue delay, the prejudice (if any) to the offender's adversary, and the salutary policy favoring the disposition of cases on the merits. Young, 330 F.3d at 81. A Court need not, however, exhaust lesser sanctions before ordering dismissal.  See e.g. Asociacion de Empleados Del Instituto De Cultura Puertorriquena v.

Rodriguez Morales, 538 F.2d 915, 917 n.6 (1st Cir. 1976)(collecting cases).

Here, the LAMCO Parties have engaged in a concerted strategy of delay and avoidance.  As reviewed above, these cases have moved forward in spite of the LAMCO Parties' continued requests for extensions of time, for time to acquire new representation, for time comply with the Court's Orders.  Although these cases have been inscribed on the Court's docket for nearly a decade, the LAMCO Parties still needed a further extension of time to file objections to the Special Master's Report.

This sort of meretricious dawdling, uninterruptedly extending for the duration of these cases, can be tolerated no further.  The Court has already imposed monetary sanctions on the LAMCO Parties for their disruption of the summary judgment hearing, to no avail.  While the LAMCO Parties swiver, the rest of the parties in this litigation are prejudiced.  The only consideration against dismissal is the salutary policy of favoring dispositions on the merits.  However, because much of the case will be otherwise resolved on the merits, and the LAMCO Parties have evinced so little interest in achieving a final disposition, this consideration does not play in their favor.

Thus, as directed by the First Circuit in Young, 330 F.3d at 81, balancing the factors for dismissal, the Court finds that the only appropriate sanction for the LAMCO Parties' inexcusable perpetuation of this process is dismissal with prejudice.

While the LAMCO Parties' accumulated protraction alone is reason enough for dismissal, their conduct in response to the Court's Order of October 13, 2004 also constitutes a distinct and sufficient reason for dismissal.  Disobedience of a court order may constitute extreme misconduct.  See Young, 330 F.3d at 81; Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002).  The Court's Order of October 13 established an unambiguous deadline and the consequences upon failure to comply.  The Court could not have made clearer that it would be

dismissing the LAMCO Parties' case in 30 days unless they took expeditious action to demonstrate to this Court their continued interest in the litigation.  Nevertheless, following the Court's Order, the docket remained largely motionless until the Peer Parties moved for dismissal on December 3rd.  The LAMCO Parties' markedly lackadaisical approach to this Court's ultimatum demonstrates an absolute disregard for this Court's authority, and alone justifies dismissal with prejudice.

Finally, the LAMCO Parties' refusal to pay the Special Master's compensation, despite having been forewarned of the likely consequences of noncompliance, is also reason enough for dismissal.  While there indeed exists an impossibility defense to the payment of a Special Master's compensation, a party must show it has taken all reasonable steps to comply.  See Halderman v. Pennhurst State School & Hospital, 673 F.2d 628, 638 (3d Cir. 1982), cert. denied, 465 U.S. 1038 (1984); Hook v. State of Ariz., 907 F.Supp. 1326, 1340 (D.Ariz. 1995).

By contrast, here, the LAMCO Parties have barely moved at all, failing to take the specific steps ordered by this Court, refusing to post bond, and stonewalling on the submission of audited financial statements.  When the Court ordered audited financial statements on May 7, 2004 (Docket No. 330), the LAMCO Parties failed to produce them until February 2, 2005, about 9 months after the original production deadline, and about three months after the deadline the Court had prescribed for the dismissal sanction.  In between, they filed incomplete financial statements, but to date, they have yet to fully disclose their financial situation to the Court.

Having carefully parsed the statements provided, the Court finds them largely incomplete--the accountants only certified LAMCO and ACEMLA through the year 2002.  Furthermore, while they certified Mr. Bernard through April 30, 2004, the certifications were based on the  year 2002 balance sheets for LAMCO and ACEMLA.  (Docket No. 359)  As such, the Court cannot credit the LAMCO Parties' trumped-up assertions of

impossibility.[18]  And even if the LAMCO Parties were in fact unable to pay, their responses to this Court's orders justify dismissal.  See Selletti v. Carey, 173 F.3d 104, 113 (2d Cir. 1999) (instructing district court on remand to consider dismissal sanction for plaintiff's refusal to pay based on the plaintiff's ability to pay, or based on plaintiff's overall conduct apart from any inability, or based on defendant's entitlement to summary judgment).

Following a careful balancing of the LAMCO Parties' cumulative obstinacy, the clear prejudice to the other parties, the Court's unquestionable need to maintain order, and the policy favoring disposition on the merits, the Court finds that any sanction other than dismissal with prejudice would not be commensurate with the LAMCO Parties' misconduct.  For the foregoing reasons, the LAMCO Parties claims, counterclaims and affirmative defenses in these consolidated cases are hereby **DISMISSED WITH PREJUDICE.**  Judgment shall be entered accordingly.

## B. Special Master's Compensation

The task of a special master need not be completed before his compensation may be exacted from a losing party.  Gary W. v. State of Louisiana, 601 F.2d 240 (5th Cir. 1979).  Moreover, this Court's Amended Order of Reference to the Special Master specified that the Special Master would bill the parties monthly and that the parties would pay upon

---

[18] The LAMCO Parties' assertions of impossibility are further undermined by their perseverance in filing new suits, for which they are otherwise able to find funding.  Aside from the instant consolidated litigation, LAMCO has found the wherewithal to actively litigate the following cases in this District: 01-1461 (PG), Latin American Mus., et al. v. Banco Popular de PR, et al., filed April 19, 2001; 02-1788 (PG), Latin American Music v. Disco Hit, et al., filed May 24, 2002; 04-1163 (PG), Latin American Music Co., Inc. et al. v. Televicentro de Puerto Rico, filed February 27, 2004; 05-1454 (PG), ACEMLA De Puerto Rico, Inc. et al. v. El Periodico de la Nacion, filed April 27, 2005;and 04-1689 (JAG), ACEMLA De Puerto Rico, Inc. et al. v. La Corporacion de Puerto Rico para la Difusion Publica, Inc. et al., filed July 8, 2004.  In addition, LAMCO settled on May 19, 2004 in 1-02625 (JAF), Latin American Music, et al. v. Goya Foods, Inc., et al., filed November 29, 2001.

receipt.  (Docket No. 277 at 3)  At this time, as per the Special Master's most recent itemization, the LAMCO Parties are delinquent in the amount of $152,865.13.  (Letter from Special Master to LAMCO Parties, enclosing summary of invoices of 6/17/05 at 2)  There is no dispute relating to the amounts owed, and no claims of any error in the billing statement.  Accordingly, judgment shall be issued against LAMCO in favor of the Special Master in the amount of $152,865.13.

## C. Special Master's Discharge

The Special Master orally requested that he be discharged on November 30, 2004.  In light of the Court's holding regarding compensation, the Special Master is hereby discharged with the gratitude of the Court.

## D. Special Master's Report and Recommendation

### 1. Standard of Review for Report and Recommendation

Fed.R.Civ.P. 53 sets forth the appropriate standard of review for a Special Master's findings of fact and conclusions of law.  See also Morgan v. Kerrigan, 530 F.2d 401, 411 n. 13 (1st Cir. 1976); Read Corp. v. Powerscreen of America, Inc., 26 F.Supp.2d 204, 206 (D.Mass. 1998); cf. Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 689 (1946).  The Court will accept the Special Master's findings of fact unless they are clearly erroneous.  Fed.R.Civ.P. 53(g)(3).  However, the Special Master's legal conclusions are subject to de novo review.  Fed.R.Civ.P. 53(g)(3); see also Williams v. Lane, 851 F.2d 867, 884 (7th Cir. 1988), cert. denied, 488 U.S. 1047 (1989).

### 2. Standard of Review on Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving party bears the initial

responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is "material" if based on the substantive law at issue, it might affect the outcome of a case; a fact is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249 (1986).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts evincing a genuine issue for trial. Fed.R.Civ.P. 56(e). The Court must construe the facts in the light most favorable to the opposing party, indulging all reasonable inferences in that party's favor. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### 3. Analysis of Report and Recommendation

The Court referred, inter alia, the issues of copyright ownership to the Special Master for Report and Recommendation. The Special Master conducted a thorough analysis of both the law and the facts, submitting the Report and Recommendation on May 10, 2004. (Docket No. 334) The deadline for the filing of objections was on May 28, 2004. Id. While the Peer Parties timely filed objections (Docket No. 335), the LAMCO Parties, following access to the Report and Recommendation on October 13, 2004, failed to any file objections until December 20, 2004.

The LAMCO Parties' objections being overlate and largely irrelevant to the merits of the Report, the Court is under no obligation to credit them, see Fed.R.Civ.P. 53(g)(2), but will examine them anyway. The LAMCO Parties lodged five objections, arguing (1) that they could not pay; (2)

that they made genuine efforts at compliance; (3) that the Court has not allowed sufficient discovery and that all the songs should be reviewed at the factual hearing; (4) that the Court may not delegate legal issues to a Special Master; and (5) that they have not seen the final report. (Docket No. 349)

The Court already determined above that the LAMCO Parties' assertions of impossibility to pay are incredible, and that their attempts at compliance were insufficient; as such, the Court does not review these arguments again.

The LAMCO Parties' third objection, which sounds in a request for further discovery, is incomprehensible to this Court.  There are boxes upon boxes of document production on file in the Clerk's Office, and as per the Special Master's Report, further documents were requested and produced for the Special Master.  Given that the LAMCO Parties did not specify what discovery they were lacking, and given that this is the first time they raise the matter, the Court finds the objection at best disingenuous.

The fourth objection is a flaccid call for a factual hearing regarding all of the songs.  However, the claim that such a hearing is necessary is made without any supporting argument, and the Court refuses to dream up any such argument where there is no clear error in the Special Master's recommendations, save for those elaborated below.

In addition, the LAMCO Parties' objection that the Court referred legal issues to the Special Master for resolution is simply inaccurate. This Court's Amended Order of Reference is clear that the matters were referred for Report and Recommendation, and the LAMCO Parties' objection must thus be disregarded as a misapprehension.

Finally, their claim that they have not seen the Special Master's report is unworthy of consideration.  This Court unequivocally specified on October 13, 2004, that the LAMCO Parties were to receive a copy of the Report and to lodge their objections.  If they did not lend their full

attention during the Conference, or if they failed to review the Minutes, or if simply they lacked the gumption to march over to the Clerk's Office to pick up a copy of the Report, they may not now claim such a defense against its adoption.   In short, the LAMCO Parties' objections are **OVERRULED**.

On the other hand, the Peer Parties timely filed specific objections to the Report and Recommendation.   (Docket No. 346)   These were two-fold: (1) an error in a finding of fact stemming from an oversight on the Peer Parties' part and (2) an error in a legal recommendation concluding that the LAMCO Parties are entitled to priority over their later transfer on certain songs, because the determination depends on an issue of fact which cannot be decided on summary judgment.

As to the first objection, the Court notes that LAMCO has not tendered any reply.   The requested modification in the Report relates to ownership rights in the renewal term of the copyright to the following ten musical compositions by Flor Morales Ramos: (1) "Ensalada de Ingles Y Espanol;" (2) "Experimento;" (3) "Felices Dias;" (4) "Feliz Ano Nuevo;" (5) "Jesus Amoroso;" (6) "Liquidacion de Feos;" (7) "Lo Que No Puede Pintarse;" (8) "Mil Felicidades;" (9) "No Cambio A Mi Puerto Rico;" and (10) "Viva Puerto Rico."[19]

Peer argues that while LAMCO recorded its later assignment of the widow's interest in the renewal term of these songs first, Peer succeeded to the children's interest who did not assign any rights to LAMCO. Having reviewed the documentation submitted by the Peer Parties, and the LAMCO Parties having lodged no objection, the Court finds that the modification of the report is warranted in light of this clear error.

The Peer Parties' oversight in failing to include this information in the chart prepared for the Special Master is assuaged by their

---

[19] These songs are respectively enumerated in the Special Master's Report as follows: 285, 287, 288, 289, 294, 297, 299, 306, 308, and 328.

inclusion of the corroborating documentation in their original motion for summary judgment and in other documentation later submitted.  (Docket No. 346 at 4)  Therefore, as to these songs, the Special Master's Report is hereby modified to reflect that the Peer Parties are the owners of the original term of the copyright, and the Peer Parties are the owners of the children's interest in the renewal term of the copyright, and the LAMCO Parties are the owners of the widow's interest in the renewal term of the copyright.

The Peer Parties' second objection relates to the Special Master's recommendation that LAMCO was entitled to succeed to the widow's interest in the renewal term copyrights of certain songs[20] because LAMCO recorded first.  As the Peer Parties point out, the Special Master concluded that Peer had obtained an earlier transfer, and 17 U.S.C. § 205(d), specifies that a later transfer is only entitled to priority if it is recorded first in good faith and without notice of the earlier transfer.  Indeed, the issues of notice and good faith are issues of fact which cannot be decided on summary judgment.  Peer Intern. Corp. v. Latin American Music Corp., 161 F.Supp.2d 38, 54 (D.P.R. 2001)(citations omitted).  Therefore, a hearing regarding only the factual issues of notice and good faith as to these specific songs shall be set for August.

---

[20] The songs for which the Peer Parties request a hearing are enumerated in the Special Master's Report as follows: No. 274 "Adiviname;" No. 277 "Amanecer Borincano;" No. 282 "Ciego Por Tres Dias;" No.  284 "Echa Pa' Lante;" No. 285 "Ensalada de Ingles y Espanol;" No. 286 "Estampas Puertorriquenas;" No. 287 "Experimento;" No. 288 "Felices Dias;" No. 289 "Feliz Ano Nuevo;" No. 290 "Fiesta de Aves;" No. 291 "Guajira Borincana;" No. 292 Huerfano de Madre;" No. 293 "Jardines de Borinquen;" No. 294 "Jesus Amoroso;" No. 295 "La Copa Rota;" No. 296 "La Jibara Mia;" No. 297 "Liquidacion de Feos;" No. 299 "Lo Que Nadie Puede Pintarse;" No. 300 "Lo Que Tu No Sabes;" No. 301 "Los Pares De Francia;" No. 306 "Mil Felicidades;" No. 307 "Mujer Traidora;" No. 308 "No Cambio A Mi Puerto Rico;" No. 310 "Nuestras Mujeres;" No. 311 "Nuestros Pueblos;" No.  312 "Parranda Jibara;' No. 313 "Pelea Entre Hermanos;" No. 315 "Preso Por Tu Amor;" No. 316 "Pueblos Borinquenos;" No. 317 "Puerto Rico Es Un Diamante;" No. 318 "Puerto Rico Y Yo;" No. 320 "Romances Y Flores;" No. 321 "Rosas del Campo;" No. 322 "Si Sabes Querer;" No. 323 "Siempre Amor;" No. 324 "Sin Remedio;" No. 325 "Triste Y Solitario;" No. 326 "Tristeza En Navidad;" and No. 328 "Viva Puerto Rico."

The parties having filed no other objections, and the Court having otherwise found no error of law or fact, with the above modifications, the Special Master's Report and Recommendation is hereby **APPROVED AND ADOPTED IN PART**, and the Peer Parties motion for modification is **GRANTED**. At this time, however, the Court postpones a determination on those songs object of the pending hearing.

## E. Summary Judgment on Peer's Infringement Claims

The Peer Parties have further requested summary judgment on their infringement claims. In order to prevail in their copyright infringement action, the Peer Parties must establish the following elements with respect to the compositions in suit: (1) originality and authorship; (2) compliance with statutory formalities; (3) ownership of the copyrights involved; and (4) unauthorized (5) public performance. See Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F. Supp. 511, 514 (D.P.R. 1993)(citations omitted). Of course, scienter need not be shown to prove copyright infringement. See Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1113 (2d Cir. 1986).

As to those songs for which the Court approved and adopted the Special Master's Report and Recommendation of ownership, the Peer Parties have already established the first three elements of their infringement claim.[21]   Furthermore, there is no question regarding the lack of authorization for any public performance, leaving only the issue of whether the LAMCO Parties publicly disseminated the compositions.

The LAMCO Parties admitted that they mistakenly left about 200 compositions in their catalogue. This Court already found that such a lapse may constitute infringement relying upon Hotaling v. Church of

_____

[21] It is well settled that the legal owner of a copyright cannot infringe upon a copyright interest owned by him and that joint copyright owners cannot maintain actions against each other for infringement of the rights jointly held. See e.g. Cortner v. Israel, 732 F.2d 267, 271 (2d Cir.1984). Accordingly, the Court shall not award infringement damages on songs in which both parties have an interest.

<u>Jesus Christ of Latter-Day Saints</u>, 118 F.3d 199, 203 (4th Cir. 1997). There, it was held that a library operator's listing of a work in the library's index or catalog system, and making that work available to borrowing or browsing public constituted "distribution" of the work within meaning of Copyright Act.  <u>See also</u> <u>Peer Intern. Corp. v. Latin American Music Corp.</u>, 161 F.Supp.2d 38, 55 (D.P.R. 2001).  Similarly here, the LAMCO Parties left a not insignificant number of songs that did not belong to them in their catalogue, and although they claim that the songs were never licensed, this Court finds that it is enough that they were listed in the catalogue.  The Court having adopted the Special Master's Report and Recommendations regarding these songs, it now expressly holds that LAMCO's failure to remove them from their catalogue constituted infringement.

Furthermore, as this Court found in its Opinion and Order of August 14, 2001, <u>Peer Intern. Corp. v. Latin American Music Corp.</u>, 161 F.Supp.2d 38, 55 (D.P.R. 2001), the LAMCO Parties failed to establish any defenses to the Peer Parties prima facie showing of infringement.  Moreover, this Court has dismissed the LAMCO Parties' affirmative defenses.  Therefore, the Court finds that the LAMCO Parties infringed on the Peer Parties' copyrights to those songs for which the Special Master's Report and Recommendation was adopted.[22]

## F. Assessment of Damages

Having determined that the LAMCO Parties infringed on the Peer Parties' copyrights, the Peer Parties have a right to recover damages. 17 U.S.C. § 504(a).  They have requested minimum statutory damages in the amount of $750, as provided by 17 U.S.C. § 504(c), for each of the 457 works found by the Special Master to be owned by the Peer Parties.

---

[22] At this time, the Court does not assess the infringement claims for the songs that remain in dispute.

However, the Court having postponed a determination on 39 of those songs, it only awards damages on the remaining 418 songs.  Partial judgment shall issue in the amount of $750 for each of the 418 songs, or $313,500.

## G. Attorney Fees and Costs

The Peer Parties have further requested attorney fees and costs. Section 505 of the Copyright Act, 17 U.S.C. § 505, provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Generally, a showing of bad faith or frivolity is not a precondition to awarding attorney fees in copyright infringement cases; the only requirements are that the fee award be granted to the prevailing party and that amount be reasonable.  Id.; see also Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 853 (11th Cir. 1990). Accordingly, it is appropriate for the Peer Parties to submit an application for reasonable attorney fees.

As to an award of costs, given the circumstances of this case, notably LAMCO's continued insistence on prolonging this litigation, the Court in its discretion also authorizes the Peer Parties to submit an application for full costs.

## III. Conclusion

The LAMCO Parties' claims, counterclaims and affirmative defenses have been **DISMISSED WITH PREJUDICE.**  In addition, judgment in the amount of the outstanding compensation shall be entered in favor of the Special Master as against the LAMCO Parties, and the Special Master is discharged with the gratitude of the Court.  Furthermore, the LAMCO Parties' objections are **DENIED,** and with the exception of the foregoing

modifications, the Special Master's Report and Recommendation is **APPROVED and ADOPTED IN PART,** and summary judgment on their infringement claims **GRANTED** in favor of the Peer Parties.  The Peer Parties are authorized to submit reasonable applications for attorney fees and costs.  Partial Judgment shall be entered accordingly.  Furthermore, a hearing shall be scheduled for August as to the 39 songs pending from the Report and Recommendation.

The remaining issues in these cases appearing to be legal in nature and the parties having already had nearly a decade to complete their research, they shall file dispositive motions on the surviving claims within 15 days.  Responses shall be due within 10 days of that deadline.  Notice is hereby given that no extensions shall be granted to any party.  Failures to comply with the aforementioned deadlines shall also result in dismissal with prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 1, 2005.


S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE