## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

LATIN AMERICAN MUSIC CO., INC.,
ET AL.,

     Plaintiffs,

        v.

THE ARCHDIOCESE OF SAN JUAN OF THE
ROMAN CATHOLIC AND APOSTOLIC
CHURCH, ET AL.,

     Defendants.

CIVIL NOS. 96-2312 (PG)
          97-2356 (PG)
          97-2875 (PG)
          98-1597 (PG)
          00-1618 (PG)

### OPINION AND ORDER

Following the Court's Opinion and Order of August 1, 2005 (Docket No. 362),[1] in which the Court dismissed the LAMCO Parties'[2] claims, counterclaims and affirmative defenses, and in which the Court adopted in part the Special Master's Report and Recommendation (Docket No. 334), this heretofore inert consolidated litigation began to move forward.

Now before the Court are several dispositive motions filed by the parties in compliance with the Order of August 1, 2005: ASCAP's[3] motion for summary judgment on the songs "Tiemblas" and "Brujeria" (Docket No. 366); the Peer Parties'[4] motion for additional relief and dismissal of the third-

---

[1] Unless otherwise designated, all "Docket No." citations pertain to the Docket of the action identified as Cv. No. 96-2312 (PG).

[2] Latin-American Music Company, Inc. ("LAMCO"), Asociacion de Compositores y Editores de Musica Latino Americana, Inc. ("ACEMLA"), and Mr. Luis Raul Bernard, the majority shareholder of both LAMCO and ACEMLA, are collectively referred to herein as the "LAMCO Parties."

[3] The American Society of Composers, Authors and Publishers or "ASCAP."

[4] Peer International Corporation, Peer International Corporation of Puerto Rico, Southern Music Publishing Company, Inc., Peermusic Ltd., Sonido, Inc. d/b/a FAF Publishing, EMI Catalogue Partnership, EMI April Music, Inc., and Broadcast Music Inc., ("BMI"), are collectively referred to herein as the "Peer Parties."

Civil No. 96-2312 (PG)                                              Page 2

party complaints (Docket No. 367); defendant and counterclaimant PCUSA's[5]
motion for entry of default judgment (Docket No. 36 in Cv. No. 00-1618
(PG)); several motions for voluntary dismissal (Docket Nos. 369, 370, and
371); motions for attorney fees and costs (Docket Nos. 368, 369, 370, and
371), and the Special Master's motion for entry of judgment (Docket No.
375).  Because neither a response nor a request for an extension has been
lodged since the expiry of the applicable deadline, the Court will treat
the motions as unopposed and proceed to rule.

In addition, having celebrated an evidentiary hearing regarding the
39 songs[6] still pending from the Special Master's Report, the Court is now
in a position to rule upon the remainder of the Report and the Peer
Parties' motion for summary judgment.  For the reasons stated below, the
Report is **NOT ADOPTED** as to the ownership of the widow's interest in the
renewal term copyrights of the aforementioned songs, the interest is
awarded to the Peer Parties, and their motion for summary judgment on their
infringement claims **GRANTED.**

---

[5] Pontifical Catholic University Services Association, Inc., or "PCUSA," is
incorrectly named as "Catholic University Association" in the Cv. No. 00-1618 (PG)
Complaint.  See Cv. No. 00-1618, Docket No. 36 at 1.

[6] The songs, as they appear enumerated in the Special Master's Report, are
the following: No. 274 "Adiviname;" No. 277 "Amanecer Borincano;" No. 282 "Ciego
Por Tres Dias;" No. 284 "Echa Pa' Lante;" No. 285 "Ensalada de Ingles y Espanol;"
No. 286 "Estampas Puertorriquenas;" No. 287 "Experimento;" No. 288 "Felices Dias;"
No. 289 "Feliz Ano Nuevo;" No. 290 "Fiesta de Aves;" No. 291 "Guajira Borincana;"
No. 292 Huerfano de Madre;" No. 293 "Jardines de Borinquen;" No. 294 "Jesus
Amoroso;" No. 295 "La Copa Rota;" No. 296 "La Jibara Mia;" No. 297 "Liquidacion de
Feos;" No. 299 "Lo Que Nadie Puede Pintarse;" No. 300 "Lo Que Tu No Sabes;" No. 301
"Los Pares De Francia;" No. 306 "Mil Felicidades;" No. 307 "Mujer Traidora;" No.
308 "No Cambio A Mi Puerto Rico;" No. 310 "Nuestras Mujeres;" No. 311 "Nuestros
Pueblos;" No.  312 "Parranda Jibara;' No. 313 "Pelea Entre Hermanos;" No. 315
"Preso Por Tu Amor;" No. 316 "Pueblos Borinquenos;" No. 317 "Puerto Rico Es Un
Diamante;" No. 318 "Puerto Rico Y Yo;" No. 320 "Romances Y Flores;" No. 321 "Rosas
del Campo;" No. 322 "Si Sabes Querer;" No. 323 "Siempre Amor;" No. 324 "Sin
Remedio;" No. 325 "Triste Y Solitario;" No. 326 "Tristeza En Navidad;" and No. 328
"Viva Puerto Rico."  Hereinafter, these are referred to as "the 39 songs."

## I. Background

This consolidated litigation concerns the ownership of copyrights in 525 classics of Latin-American song.  After years of deadlock, the Court referred most of the claims to a Special Master for a Report and Recommendation, which was issued on May 13, 2004.  (Docket No. 334)

Following the LAMCO Parties' disregard for deadlines and Orders, this Court issued an Opinion and Order on August 1, 2005, sanctioning the LAMCO Parties with the dismissal of their claims, counterclaims and affirmative defenses.  (Docket No. 362)  The Special Master's Report and Recommendation was approved and adopted in part, and summary judgment on most of their infringement claims granted in favor of the Peer Parties.  Id.

The Court further concluded that the Peer Parties raised colorful objections to the Special Master's recommended disposition regarding ownership of the widow's interest in the renewal copyright term of 39 songs.  Id.  The Peer Parties submitted that the questions of notice and good faith could not be determined absent an evidentiary hearing, and the Court agreed.  Id.  An evidentiary hearing was accordingly calendared for September 20, 2005.  (Docket No. 373)

In addition, noting that the parties had enjoyed nearly a decade to complete their research, the Court instructed them to file dispositive motions on any surviving claim by August 17, 2005.  (Docket No. 362) Responses were due by August 29, 2005.  Id.  Notice was given that no extensions would be forthcoming and that any failure to abide by the deadlines would also result in dismissal with prejudice.  Id.

Several parties complied with the deadline.  ASCAP renewed its motion for summary judgment on two songs, "Tiemblas" and "Brujeria."  (Docket No. 366)  In light of the Opinion and Order of August 1, 2005, the Peer Parties moved for injunctive relief enjoining the LAMCO Parties from any further

infringement on their copyrights, for an order instructing the LAMCO Parties to delete all references from their promotional materials to the Peer Parties' compositions, and for an order instructing the LAMCO Parties to file the appropriate documentation for expunction from the records of the Copyright Office of any document affecting the Peer Parties' titles to the songs object of this consolidated litigation.  (Docket No. 367)  The Peer Parties also requested that the Third Party Complaints filed in Cv. No. 96-2312 be dismissed, which motion was joined by ASCAP.[7]  (Docket No. 371)  Both the Peer Parties and ASCAP filed applications for costs and fees.  (Docket Nos. 368 and 372)

Yet another group of dispositive motions was filed by the radio stations who brought actions for declaratory judgment,[8] identified as Cv. Nos. 97-2356 (PG) and 98-1597 (PG).  These parties moved for dismissal of the same and further requested costs and attorney fees.  (Docket No. 370) Another group of radio stations, originally co-defendants in Cv. No. 96-2312,[9] also voluntarily requested dismissal of their third-party complaint against BMI and ASCAP as well as their counterclaims filed in Civil No. 96-2312 (PG).  They too requested costs and attorney fees.  (Docket No. 369)

---

[7] ASCAP also sought to join what they termed the "WORO dispositive motion for entry of summary judgment on any surviving claim," which cites to Docket Nos. 367 and 369, neither of which was filed by co-defendant and third party plaintiff WORO. The Court's review of the record reveals that WORO has filed no motions following the Order of August 1, 2005.

[8] Turabo Radio Corp., ARSO Radio Corporation, WNEL-AM also known as Radio Tiempo; WTVA-FM also known as Salsoul; El Mundo Broadcasting Corp., WKAQ-FM; Prime Media Broadcasting Group, Inc.; and WXNT-FM also known as Z-93.

[9] This group of Radio Stations is composed of Isabela Broadcasting Co., d/b/a WKSA-FM Radio; Kelly Broadcasting System, Corp., d/b/a WNIK-FM, d/b/a WNIK-AM; Bestov Broadcasting, d/b/a WIAC-AM, d/b/a WIAC-FM, also known as Sistema 102; Aerco Broadcasting Corp., d/b/a WQBS-AM, also known as Cadena QBS; VI-MAN Broadcast System, Corp., d/b/a WEGA-AM, also known as Radio Las Vegas.  The Court notes that other counterclaimants such as Tommy Muniz Prod., and the Archdiocese of San Juan or "WORO," apparently did not join the motions for voluntary dismissal.

Among the other dispositive motions, defendant and counterclaimant PCUSA moved for entry of default judgment on its counterclaim against ACEMLA, as well as costs and fees. (Docket No. 36 in Cv. No. 00-1618 (PG)). The Special Master also moved for entry of final judgment pursuant to Federal Rules of Civil Procedure 54(b) and 71. (Docket No. 375).

Although the Court could not have made it clearer that the failure to file a dispositive motion by the deadline would result in the dismissal with prejudice, no other motions were filed. Similarly, no responses were filed, and the aforementioned motions all stand unopposed.

The hearing on the 39 songs was held as scheduled on September 20, 2005. (Docket No. 373) Testimony was offered on what the Peer Parties characterized as the LAMCO Parties' "willful blindness" of the prior transfers and agreements regarding the widow's interest in the songs at issue. The LAMCO Parties countered with their assertion that the Peer Parties had intentionally kept them "in the dark" by not registering their interests at the Copyright Office.

## II. Discussion

The Court has organized its discussion as follows. First, the Court treats the dispositive motions, seriately by party, beginning with the 39 songs pending from the Special Master's Report and Recommendation, and pausing to rule upon the Peer Parties' requests for additional relief and dismissal of the third-party complaints. The Court then evaluates ASCAP's motion for summary judgment and defendant and counterclaimant PCUSA's[10] motion for entry of default judgment. (Docket No. 36 in Cv. No. 00-1618 (PG)). Next, the Court proceeds to the motions for voluntary dismissal,

---

[10] Pontifical Catholic University Services Association, Inc., ("PCUSA"), incorrectly named as "Catholic University Association" in the Complaint, see Docket No. 36.

attorney fees and costs, and finally, to the Special Master's motion for
entry of judgment.


A. The 39 Songs pending from the Report and Recommendation

*1. Standard of Review for Report and Recommendation*

     Fed.R.Civ.P. 53 sets forth the appropriate standard of review for a
Special Master's findings of fact and conclusions of law.  See also Morgan
v. Kerrigan, 530 F.2d 401, 411 n. 13 (1st Cir. 1976); Read Corp. v.
Powerscreen of America, Inc., 26 F.Supp.2d 204, 206 (D.Mass. 1998); cf.
Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 689 (1946).  The Court will
accept the Special Master's findings of fact unless they are clearly
erroneous.  Fed.R.Civ.P. 53(g)(3).  However, the Special Master's legal
conclusions are subject to de novo review.  Fed.R.Civ.P. 53(g)(3); see also
Williams v. Lane, 851 F.2d 867, 884 (7th Cir. 1988), cert. denied, 488 U.S.
1047 (1989).


*2. Standard of Review on Summary Judgment*

     Summary judgment is appropriate if there is no genuine issue as to any
material fact and the moving party is entitled to a judgment as a matter
of law.  Fed.R.Civ.P. 56(c).  The moving party bears the initial
responsibility of demonstrating the absence of a genuine issue of material
fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is
"material" if based on the substantive law at issue, it might affect the
outcome of a case; a fact is "genuine" if there is sufficient evidence to
permit a reasonable trier of fact to resolve the issue in the non-moving
party's favor.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249
(1986).

     Once the moving party has satisfied this requirement, the nonmoving
party has the burden of presenting any facts evincing a genuine issue for

trial.  Fed.R.Civ.P. 56(e).  The Court must construe the facts in the light most favorable to the opposing party, indulging all reasonable inferences in that party's favor.  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

### *3. The Peer Parties' Objections*

The Peer Parties objected to the Special Master's recommendation that LAMCO was entitled to succeed to the widow's interest in the renewal term copyrights of the 39 songs.  (Docket No. 346)  The songs in controversy were all created by composer Flor Morales Ramos.  The composer passed away leaving the renewal interests in his children and widow.  Peer International reached an agreement with the children and the widow on April 6, 1993, but failed to record the same.  Subsequently, on February 2, 1996, LAMCO also reached an agreement with the widow, and recorded it on March 19, 1996.

Although the Special Master noted that Peer International Corporation had obtained an earlier transfer, he concluded under section 205(d)[11] of the Copyright Act of 1976 that LAMCO was entitled to priority because it registered first.  (Docket No. 334 at 184-217)  The Copyright Act of 1976 specifies that a later transfer is only entitled to priority if it is recorded first in good faith and without notice of the earlier transfer.

---

[11] Post-1978 transfers of copyrights created under the 1909 Act are governed by the current Act's recording provisions. <u>In re Peregrine Entertainment, Ltd.</u>, 116 B.R. 194, 199 (C.D.Cal. 1990)(citing 3 NIMMER ON COPYRIGHT § 10.07[D], at 10-64--10-69 (1989)).

17 U.S.C. § 205(d).  The Court therefore agreed with the Peer Parties that the issues of notice and good faith cannot be decided on summary judgment absent an evidentiary hearing.  Peer Intern. Corp. v. Latin American Music Corp., 161 F.Supp.2d 38, 54 (D.P.R. 2001) (citations omitted). Consideration of this portion of the Special Master's Report was accordingly postponed.  (Docket No. 362 at 22)

*4. De Novo Review of the Special Master's Recommendations*

    A hearing confined only to the issues of notice and good faith regarding the renewal term of the widow's interest in the 39 songs was held on September 20, 2005.  Both parties presented the testimony of witnesses, with the Peer Parties closing with the argument that the LAMCO Parties had exercised at best "willful blindness," and the LAMCO Parties emphasizing the testimony of Mr. Raul Bernard, who stated that his searches at the Copyright Office never revealed that any of the Peer Parties actually registered their interests.   Having held the hearing, the Court now analyzes de novo whether the LAMCO Parties subsequent transfers were taken without notice and in good faith pursuant to § 205(d).

    The term "notice" in § 205(d) includes actual notice, inquiry notice, and constructive notice.  3 NIMMER ON COPYRIGHT § 10.07[A][2]; Peer Intern. Corp. v. Latin American Music Corp., 161 F.Supp.2d 38, 54 (D.P.R. 2001) (citations omitted).  "[C]onstructive and [inquiry] notice or knowledge are equivalent to knowledge.  So, when [a party] has notice or information to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books)," he or she is held to have notice." General Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991).  Actual notice is a legal question which may pose difficult questions of proof as to whether a subsequent transferee possessed actual knowledge of a prior

transfer.   Inquiry or presumed notice is generally a question for the finder of fact.   See id.   Thus, under the 1976 Act, even if a prior transferee fails to record, and indeed even if the prior transferee never records his transfer, he will still prevail as against a subsequent transferee who takes with notice of the prior transfer.  See Rytvoc, Inc. v. Robbins Music, Corp., 289 F.Supp. 136 (S.D.N.Y. 1967).

Good faith entails "not only honesty in fact, but reasonableness as well." Quinto v. Legal Times of Washington, Inc., 506 F.Supp. 554, 562 (D.D.C. 1981); see also In re AEG Acquisition Corp., 127 B.R. 34, 43-44 (C.D.Cal. 1991), aff'd, 161 B.R. 50 (1993) ("a later transfer of an interest in a copyright qualifies for priority only if the transferee has been honest in fact in the transaction at issue, and has also met each of the other qualifications.").  A defendant must make a "good faith" effort to avoid copyright infringement.  See Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345, 1348 (8th Cir.1994). " 'Good faith' is an ancient concept in the law, normally equated with 'honesty of intention,'  In Re Johnson, 708 F.2d 865, 868 (2d Cir. 1983), and acting 'equitably,' In Re Goeb, 675 F.2d 1386, 1390 (9th Cir. 1982)."  American Home Assur. Co. v. Baltimore Gas & Elec. Co., 1987 WL 4928, at *5 n.3 (S.D.N.Y. 1987), aff'd, 845 F.2d 48 (2d Cir. 1988).  Even where the defendant believes in good faith that he is not infringing a copyright, he may be found liable.  See County of Ventura v. Blackburn, 362 F.2d 515 (9th Cir. 1966).  More than simple "innocence" is required.

Applying these standards, the Court finds that the LAMCO Parties had at least some form of notice.  A letter from Mr. Bernard to Southern admitted at the hearing states that the "widow has assigned to [LAMCO] all rights terminating any purported transfers," points to actual notice regarding Peer's renewals.  (9/20/05 Def. Hr. Ex. E)

The LAMCO Parties also had inquiry notice.  Indeed, it was admitted by Mr. Bernard, owner of both LAMCO and ACEMLA, that he was aware of the Peer Parties' registrations of their interests in the original terms of the copyrights.  Had he conducted a search, he would have found the renewals. Although a renewal is not enough to establish ownership, Rose v. Bourne, Inc., 176 F.Supp. 605 (S.D.N.Y. 1959), aff'd 279 F.2d 79 (2d Cir. 1960), it may contribute to notice.  Even if the LAMCO Parties had not conducted a search at the Copyright Office, as illustrated by Peer's timely renewal for Song No. 322, "Si Sabes Querer," they should have known that someone was claiming an interest in the song because absent a renewal, it would have entered the public domain.

Moreover, the LAMCO Parties could have (and should have) asked the widow[12] or the children of the author, who clearly knew of the prior transfers.  These factors together lead to the conclusion that the LAMCO Parties had either actual, constructive or inquiry notice.  See Peer Intern. Corp. v. Latin American Music Corp., 161 F.Supp.2d 38, 48-49 (D.P.R. 2001).

The Court must also conclude that the LAMCO Parties could not have recorded their later transfers in good faith.  As set forth above, good faith entails "not only honesty in fact, but reasonableness as well." Quinto v. Legal Times of Washington, Inc., 506 F.Supp. 554, 562 (D.D.C.

---

[12] The Court was not persuaded by the testimony of the widow, who claimed that it was not her signature on the Peer Parties' earlier transfer.  First, having had the opportunity to evaluate the witness' tone and demeanor, the Court found her incredible.  Second, the Court was presented with a signature provided by the witness during her testimony for contrast with the 1993 transfer executed between Peer and the witness.  Although the Court lacks the expertise of a graphologist, the Court found the major elements of the two signatures identical. (9/20/05 Def. Hr. Ex. F)  The Court also found it incongruous that the witness could authenticate all of the signatures of the composer's children on the transfer agreements, while alleging that she herself never signed.  Furthermore, the witness admitted that she had received royalty payments from the Peer Parties in her name.  Finally, the Court finds the timing of the claim, first asserted nearly a decade after this litigation began, highly suspicious.

1981). Even if the LAMCO Parties had no actual knowledge of Peer's earlier transfer, given the fact that these were renewal interests at issue, and that the songs had not entered the public domain, the LAMCO Parties' behavior lacks the hallmarks of good faith, more closely resembling a predatory fast one. The Court agrees with the Peer Parties that such behavior smacks of "willful blindness" and finds it patently unreasonable. Coupled with the letter mailed by Mr. Bernard to Southern, which suggests that the LAMCO Parties were working around "a purported transfer" (9/20/05 Def. Hr. Ex. E), the Court cannot find that the LAMCO Parties acted in good faith.

In sum, having carefully evaluated the evidence, the Court holds that the LAMCO Parties did not satisfy the notice and good faith requirements of section 205(d). Accordingly, the Peer Parties' earlier transfers shall prevail, and the Court does **NOT ADOPT** the Special Master's recommendation regarding the widow's interest in the 39 songs. No material issue of fact remaining, and the Peer Parties being entitled to summary judgment as a matter of law, the Peer Parties motion for summary judgment is **GRANTED**, and the widow's interest is hereby awarded to the Peer International.

## B. Summary Judgment on Infringement of the 39 Songs

### 1. Infringement Claims

The Peer Parties have further requested summary judgment on their infringement claims. (Docket No. 346) In order to prevail in their copyright infringement action, the Peer Parties must establish the following elements with respect to the compositions in suit: (1) originality and authorship; (2) compliance with statutory formalities; (3) ownership of the copyrights involved; and (4) unauthorized (5) public performance. See Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F. Supp. 511, 514 (D.P.R. 1993)(citations omitted). Of course, scienter need

not be shown to prove copyright infringement.  See <u>Fitzgerald Publ'g Co.,</u> <u>Inc. v. Baylor Publ'g Co., Inc.,</u> 807 F.2d 1110, 1113 (2d Cir. 1986).

Having determined that the Peer Parties' earlier transfer prevailed, the Peer Parties have already established the first three elements of their infringement claim.  Furthermore, there is no question regarding the lack of authorization for any public performance, leaving only the issue of whether the LAMCO Parties publicly disseminated the compositions.

As this Court found in its Opinion and Order of August 14, 2001, <u>Peer</u> <u>Intern. Corp. v. Latin American Music Corp.</u>, 161 F.Supp.2d 38, 55 (D.P.R. 2001), the LAMCO Parties failed to establish any defenses to the Peer Parties prima facie showing of infringement.  Moreover, this Court has dismissed the LAMCO Parties' affirmative defenses. (Docket No. 362) Therefore, the Peer Parties' motion for summary judgment on their infringement claims is **GRANTED** as it pertains to these 39 songs.

*2. Damage Assessment*

Having determined that the LAMCO Parties infringed on the Peer Parties' copyrights, the Peer Parties have a right to recover damages.  17 U.S.C. § 504(a).  They have requested minimum statutory damages in the amount of $750, as provided by 17 U.S.C. § 504(c), for each of the 457 works found by the Special Master to be owned by the Peer Parties.  (Docket No. 346)  The Court having earlier postponed a determination on 39 of those songs, it now awards infringement damages on the same.  Partial judgment shall issue in the amount of $750 for each of the 39 songs, or $29,250, in favor of Peer International Corporation.

C. Peer Parties' Motion for Additional Relief

In light of the Opinion and Order of August 1, 2005, the Peer Parties moved for injunctive relief enjoining the LAMCO Parties from any further

infringement on their copyrights, for an order instructing the LAMCO Parties to delete all references from their promotional materials to the Peer Parties' compositions, and for an order instructing the LAMCO Parties to file the appropriate documentation for expunction from the records of the Copyright Office of any document affecting the Peer Parties' titles to the songs object of this consolidated litigation.  (Docket No. 367)

The Court has the power to grant temporary and permanent injunctions in actions arising under the Copyright Act of 1976 to prevent or restrain copyright infringement.  17 U.S.C. § 502(a) (2003).  Section 502(a) of the Act permits the Court to order a temporary or permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  Because injunctions are extraordinary remedies, courts only grant them in copyright cases when plaintiffs prove the possibility or threat of continuing or additional infringements.  Peer Intern. Corp. v. Luna Records, Inc., 887 F.Supp. 560, 570 (S.D.N.Y. 1995) (citations omitted).

In the instant action, liability has been determined and there remains a viable threat of continued infringement because the Copyright Office records and the LAMCO/ACEMLA catalogues still incorrectly manifest the LAMCO Parties' interests in many of the songs in controversy.  Therefore, a permanent injunction will issue and the Peer Parties' request is **GRANTED**.[13]

_____

[13] Injunctive relief shall issue permanently enjoining the LAMCO Parties, their agents, servants, employees, contractors and all persons, firms, corporations or entities acting under their direction, authority or control, and all persons acting in concert with any of them, from authorizing or purporting to authorize or license the public performance or any other use of the Peer Parties' compositions object of this consolidated litigation, and from otherwise infringing or contributing to or participating in the infringement of the aforementioned songs; further ordering the LAMCO Parties to delete all references to the Peer Parties' compositions from their catalogues and all marketing or promotional materials; and further ordering the LAMCO Parties to file the appropriate quitclaims and assignments and to otherwise have expunged from the records of the Copyright Office any and all unlawful contracts, assignments or other recorded documents affecting

Civil No. 96-2312 (PG)                                          Page 14

D. Dismissal of the pending Third-Party Complaints

     The Peer Parties have also requested dismissal of the third-party
complaints for indemnification (Docket No. 367), which was joined by ASCAP.
(Docket No. 371)  Three such third-party complaints were filed, the first
was filed by Isabela Broadcasting, Kelly Broadcasting, Bestov Broadcasting,
Aerco Broadcasting, and VI-MAN Broadcasting against BMI and Peer
International (Docket No. 33) A second third-party complaint was filed by
Isabela Broadcasting, Kelly Broadcasting, Bestov Broadcasting, Aerco
Broadcasting, VI-MAN Broadcast against ASCAP.  (Docket No. 40) The latest
was filed by the Archdiocese of San Juan against BMI and ASCAP.  (Docket
No. 43)  One was voluntarily dismissed.

     Otherwise, the Court having dismissed the LAMCO Parties' claims
counterclaims and affirmative defenses against the radio stations (Docket
No. 362), their third party complaints for indemnification become **MOOT**.
Federal courts are without power to determine the merits of moot claims.
DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164
(1974).

     Moreover, no dispositive motion regarding the third-party complaint
was filed, and the same is hereby dismissed for failure to comply with the
Court's scheduling order.  As such, the Peer Parties and ASCAP are entitled
to dismissal.  Judgment shall be entered accordingly.


E. ASCAP's Motion for Summary Judgment

     Third-party defendant ASCAP has renewed its cross-motion for summary
judgment on the songs "Tiemblas" and "Brujeria" by T.C. Alonso.  (Docket
No. 214, filed August 23, 2001).

--------------------

the Peer Parties' title in and to the compositions object of this consolidated
litigation.

Upon review of the motion, however, the Court became aware that several of the Exhibits are in Spanish, most notably, the crucial sublicensing agreement between EMLASA and Universal, on which ASCAP's rights turn. As such, the Court cannot consider them. See Local Rule 43. It is well settled that "federal litigation in Puerto Rico [must] be conducted in English." Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004). "In collecting a record for summary judgment a district court must sift out non-English materials, and parties should submit only English-language materials." Id.; Gonzalez-De-Blasini v. Family Dept., 377 F.3d 81, 88 (1st Cir. 2004). No translations appear in the record, and thus, the Court need go no further to deny this motion.

Were the Court to consider it on the merits, however, as elaborated above, to prevail on its infringement claim, ASCAP must show ownership of the copyright or of a valid sublicensing agreement. See Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F. Supp. 511, 514 (D.P.R. 1993).

Here, ASCAP was entitled to sublicense "Tiemblas" and "Brujeria" by way of an assignment from Universal, later reorganized as Unimusica, who in turn maintained a sublicensing agreement with EMLASA,[14] the copyright owner. That said, as pointed out by LAMCO, (Docket No. 221), at the time the alleged infringements occurred between 1993 and 1996, there was no active agreement between Universal and EMLASA by which Universal could transfer an interest to ASCAP. The original Universal-EMLASA agreement expired in 1985, and no new agreement was executed until October of 1999. See Docket No. 214, Spanish Language Exhibit D at ¶ 7 and Ex. G. As such, the agreement under which ASCAP claims its sublicensing rights from Universal, cannot convey any rights over "Tiemblas" and "Brujeria" during the period when the breaches allegedly occurred. The Court therefore finds that ASCAP has failed to state a claim and summary judgment is **DENIED.**

---

[14] Editorial Musical Latino-Americana, S.A., ("EMLASA").

Civil No. 96-2312 (PG)                                              Page 16

F. PCUSA's Motion for Default Judgment

PCUSA is the defendant and counterclaimaint in Cv. No. 00-1618 (PG).
Following the sanctions imposed by the Court in the Opinion and Order of
August 1, 2005, PCUSA has requested the entry of default judgment on its
counterclaim for nullity of contract.[15]  (Cv. No. 00-1618 (PG), Docket No.
36)

A counterclaimant may apply for judgment by default under Rule 55(b)
of the Federal Rules of Civil Procedure after a court sanctions a
counterdefendant with the striking of all his pleadings and defenses.  See
John's Insulation, Inc., v. L. Addison and Associates, Inc., 156 F.3d 101,
110 (1st Cir. 1998) (affirming entry of judgment by default as a matter of
law in favor of counterclaimant after the court dismissed with prejudice
the claims and affirmative defenses of the plaintiff and counterdefendant
for disobeying interlocutory orders).  Here, the Court accordingly finds
that PCUSA is also entitled to a default judgment.

Federal Rules of Civil Procedure 55(b)(2) grants the district judge
discretion to decide whether to enter a judgment by default, and empowers
him to hold hearings or order such procedures as he deems necessary and
proper.  U.S. v. Cabrera-Diaz, 106 F.Supp.2d 234, 243 (D.P.R. 2000) (citing
10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure: Civil 3d § 2684) (footnotes omitted).

It is black-letter law that a defendant's default constitutes an
admission of all well-pleaded facts in the complaint.  Banco Bilbao Vizcaya
Argentaria v. Family Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002);
Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("[a] party

---

[15] In addition, PCUSA also originally alleged a claim for declaratory judgment
to the effect that the contract was null and void.  (Cv. No. 00-1618 (PG), Docket
No. 20 at 8-9).  However, PCUSA apparently dropped the claim for declaratory
judgment by not requesting it in its motion for default judgment. (Cv. No. 00-1618
(PG), Docket No. 36)

who defaults is taken to have conceded the truth of the factual allegations in the complaint"); Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5 (1st Cir. 1985) ("there is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true...."), cert. denied, 475 U.S. 1018 (1986).

In the case at bar, the Court in its discretion extends the sanction of dismissal to the LAMCO Party's default in Cv. No. 00-1618 (PG) as requested by PCUSA. See John's Insulation, 156 F.3d at 110.   PCUSA counterclaimed for the amounts it had paid the LAMCO Parties for the right to publish the songs in their catalogue, which ascended to $27,124.00 between 1997 and 2000.  Rescission of the licensing agreement was requested under Puerto Rico law on the grounds that error and deceit voided PCUSA's consent.

Now, in its motion for default judgment, PCUSA adds that it was overcharged roughly ten thousand times, compared with the prevailing market rate, and that the contract should therefore be rescinded as substantively unconscionable.  (Cv. No. 00-1618 (PG), Docket No. 36 at 7).   In the alternative, PCUSA submits that the contract is also void because ACEMLA failed to file a copy of the agreement with the Library of Congress as required by 17 U.S.C. § 118(b)(2).  (Cv. No. 00-1618 (PG), Docket No. 20 at 4-5).  Whatever merit there may be to these new claims, the Court cannot treat these because they were not pled in the counterclaim.  "The usual rule [is] that judgments entered by default may not give other or more extensive relief than that asked for in the pleadings." See Davison v. Fernandez, 264 F.2d 131, 132 (1st Cir. 1959); Fed.R.Civ.P. 54(c) ("a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment") (citing 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1258).   The Court

examines, however, the defenses to formation originally alleged in the counterclaim as a basis for rescission.

Under Puerto Rico law, a contract comes into existence when: (1) the contracting parties consent; (2) there is a definite object which may be the subject of the contract; and (3) there is cause for the obligation. Article 1213 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3391. Nonetheless, "[c]onsent given by error, under violence, by intimidation, or deceit shall be void." Article 1217 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3404.

The Civil Code goes on to specify, in Article 1221, 31 L.P.R.A. section 3408, that "[t]here is deceit when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made." It later clarifies, however, that the deceit which "may give rise to the nullity of a contract ... must be serious, and must not have been employed by both of the contracting parties." Article 1222, 31 L.P.R.A. section 3409.

The error that "invalidate[s] the consent, must refer to the substance of the thing, which may be the object of the contract, or to those conditions of the same, which should have been principally the cause of this execution." Civil Code (1930) § 1218, 31 L.P.R.A. § 3405. The error of substance which vitiates the consent of a party may affect not only the matter or elements of which the thing under contact is composed but also those qualities or attributes which the parties had particularly in mind at the time of contracting. Capo v. Ramos, 83 P.R. 625 (1961). Error regarding the object or the conditions which were the primary reasons for entering into the contract will invalidate consent. Cooperative v. Castillo, 107 P.R. Dec. 405 (1978).

In this case, PCUSA alleged in its counterclaim that it was induced to sign the contract because ACEMLA wrongfully and deceitfully misrepresented that it possessed licensing rights over the musical compositions object of the contract, inducing PCUSA to pay about $30,000. (Docket No. 20 at 7)   Treating these allegations as true, Banco Bilbao Vizcaya Argentaria, 285 F.3d at 114, the Court must conclude that PCUSA is entitled to judgment by default on its claim to nullify the contract.

PCUSA's request for rescission is based on Article 1255 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3514, which provides that "when the nullity of an obligation has been declared, the contracting parties shall restore to each other the things which have been the object of the contract with their fruits, and the value with its interest...."   See also Riofrio Anda v. Ralston Purina Co., 772 F.Supp. 46, 52 (D.P.R. 1991); Caraballo Cordero v. Banco Financiero de Puerto Rico, 208 F.Supp.2d 185, 189 (D.P.R. 2002).

PCUSA has also requested costs and attorney fees pursuant to Section 505 of the Copyright Act.   For the reasons stated infra, PCUSA is authorized to submit and application for fees and costs.

Therefore, having determined that PCUSA is entitled to a judgment by default, and the Court being fully advised in the premises, the motion is **GRANTED**, and judgment shall be entered in favor of PCUSA against ACEMLA in the amount of $27,124 plus legal interests, costs and attorney fees.


G. Motions for Voluntary Dismissal

There are several motions for voluntary dismissal pending before the Court, all of which requested that the Court postpone dismissal until its determination on the 39 songs.   (Docket Nos. 369 and 370)

Rule 41(a)(1) of the Federal Rules of Civil Procedure permits a voluntary dismissal by the plaintiff either before an answer or a summary

judgment motion is served or on the stipulation of all parties.  Since the
plaintiff's motion here was filed in the late stages of this litigation,
paragraph (2) applies:

> (2) By Order of Court.  Except as provided in
> paragraph (2) of this subdivision of this rule, an
> action shall not be dismissed at the plaintiff's
> instance save upon order of the court and upon such
> terms and conditions as the court deems proper....
> Unless otherwise specified in the order, a dismissal
> under this paragraph is without prejudice.

Fed.R.Civ.P. 41(a)(2).

    "The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff,
with court approval, to voluntarily dismiss an action so long as no other
party will be prejudiced."  Puerto Rico Maritime Shipping Authority v.
Leith, 668 F.2d 46, 50 (1st Cir. 1981)(citing LeCompte v. Mr. Chip, Inc.,
528 F.2d 601, 604 (5th Cir. 1976)).

    At this point, the LAMCO Parties can only benefit from the dismissals,
because the sanction imposed by this Court precludes them from asserting
any affirmative defense.  Accordingly, the motions are **GRANTED** as requested
and judgment will issue dismissing with prejudice the complaint in Civil
No. 98-1597, and Civil No. 97-2356, and dismissing without prejudice the
counterclaim docketed as No. 17 in Civil No. 96-2312.


H. Motions for Attorney Fees and Costs

    Several parties have requested attorney fees and costs.  [list]
Section 505 of the Copyright Act, 17 U.S.C. § 505, provides:

> In any civil action under this title, the court in
> its discretion may allow the recovery of full costs
> by or against any party other than the United States
> or an officer thereof.  Except as otherwise provided
> by this title, the court may also award a reasonable
> attorney's fee to the prevailing party as part of the
> costs.

Generally, a showing of bad faith or frivolity is not a precondition to
awarding attorney fees in copyright infringement cases; the only

Civil No. 96-2312 (PG)                                                    Page 21

requirements are that the fee award be granted to the prevailing party and
that amount be reasonable.  Id.; see also Cable/Home Communication Corp.
v. Network Productions, Inc., 902 F.2d 829, 853 (11th Cir. 1990).
Accordingly, it is appropriate for the prevailing parties to submit an
application for reasonable attorney fees.

As to an award of costs, given the circumstances of this case, notably
LAMCO's continued insistence on prolonging this litigation, the Court in
its discretion also authorizes the prevailing parties to submit an
application for full costs.

Already before the Court is the Peer Parties' application for fees and
costs.  (Docket No. 372)  To determine a reasonable amount of attorney
fees, courts in this Circuit apply the "lodestar" approach, first
calculating the prevailing hourly rate and then time spent performing the
various legal tasks, finally subtracting those which are excessive,
duplicative, or unnecessary.  Id. at 326-27; see also Gay Officer Action
League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001).

Having carefully reviewed the Peer Parties' application, the Court has
unearthed errata, including, e.g., a $1,350.00 per hour billing rate for
a paralegal.  (Docket No. 372 at 13)  Moreover, the Peer Parties have
neglected to disclose the legal task to which particular time was
dedicated.  Therefore, the application is **DENIED WITHOUT PREJUDICE**, the
Peer Parties to submit a corrected application.

Also before the Court is ASCAP's motion for attorney fees and costs.
This application exhibits detailed contemporaneous time records, as per the
preference in this Circuit.  See Grendel's Den, Inc. v. Larkin, 749 F.2d
945, 952 (1st Cir. 1984) ("Henceforth, in cases involving fee applications
for services rendered after the date of this opinion, the absence of
detailed contemporaneous time records, except in extraordinary

Civil No. 96-2312 (PG)                                                    Page 22

circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance.").

The Court first determines the appropriate hourly rate. According to the lodestar method, "the hourly rate should be 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " Tejada-Batista, 263 F.Supp.2d at 327 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984). "In reaching its determination, the court may rely upon its own knowledge of attorneys' fees in the community." Rodriguez v. International College of Business and Technology, Inc., 356 F.Supp.2d 92, 96 (D.P.R. 2005) (citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989)).

Courts may award different rates depending on whether the time was invested in-court or out of court. See Ciudadana v. Gracia-Morales, 359 F.Supp.2d 38, 45 (D.P.R. 2005) (finding rates of $200.00 an hour for out of court work and $225.00 an hour in-court work justified); Rodriguez, 356 F.Supp.2d at 96-97 (finding rate of $190 and $125 to be appropriate); Top Entertainment Corp. v. Torrejon, 349 F.Supp.2d 248, 253 -255 (D.P.R. 2004) (finding hourly rate of $125.00 reasonable); Anywhere, Inc. v. Romero, 344 F.Supp.2d 345, 348 (D.P.R. 2004) (finding rate of $250 to be appropriate); Vieques Conservation and Historical Trust, Inc. v. Martinez, 313 F.Supp.2d 40, 47 (D.P.R. 2004) (reducing attorney's hourly rate to $225 to equate with local rates).

ASCAP received services at rates escalating to $275.00 per hour, which is within the realm of reasonableness, as measured by recent caselaw. The Court has carefully reviewed the itemized invoices of the work performed throughout this case and finds that the resource allocation reasonable. Therefore, the motion for fees is **GRANTED**, and the LAMCO Parties shall reimburse $69,220.25 in attorney fees to ASCAP.

ASCAP also requested reimbursement for costs, and the Court having held <u>supra</u> that such an award was appropriate, the Clerk of Court shall tax costs.

I. Special Master's Motion for Entry of Judgment

Rule 54(b) of the Federal Rules of Civil Procedure, allows the immediate entry of a partial final judgment as to fewer than all the claims in a multi-claim action "upon an express determination that there is no just reason for delay." Although there is a "long-settled and prudential policy against the scattershot disposition of litigation," the district court may grant relief Rule 54(b) ,upon an individualized assessment of the desirability and effect of immediate appealability. <u>Quinn v. City of Boston</u>, 325 F.3d 18, 26 (1st Cir. 2003). "Thus, if a district court wishes to enter a partial final judgment on the ground that there is no just reason for delay, it should not only make that explicit determination but should also make specific findings and set forth its reasoning." <u>Id.</u>

In this case, the Special Master's application for entry of final judgment (Docket No. 375), is well taken. The task of a special master need not be completed before his compensation may be exacted from a losing party. <u>Gary W. v. State of Louisiana</u>, 601 F.2d 240 (5th Cir. 1979). The Special Master was discharged with the gratitude of the Court and on August 1, 2005, partial judgment already issued against LAMCO in favor of the Special Master in the amount of $152,865.13, and still the LAMCO Parties have failed to make payment. (Docket No. 363) Given these circumstances, there is no just reason for further delay. The Special Master's motion is **GRANTED**, and a Final Partial Judgment pursuant to Fed.R.Civ.P. 54(b) shall issue forthwith.

Civil No. 96-2312 (PG)                                              Page 24

J. Failure to Comply with Dispositive Motions Deadline

     The district court is empowered to sanction parties with dismissal for
failure to comply with a scheduling order, upon due warning of the
consequences of non-compliance.   Disobedience of a court order may
constitute extreme misconduct.  See Young, 330 F.3d at 81; Tower Ventures,
Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002)("[L]itigants
have an unflagging duty to comply with clearly communicated case-management
orders.")(citation omitted).   The Court's Order of August 1, 2005
established an unambiguous deadline and the consequences of dismissal with
prejudice upon failure to comply.  (Docket No. 362)  Since the expiry of
the deadline for dispositive motions on August 17, 2005, id., save for the
motions treated herein, not even a motion for extension of time has been
filed.  The Court cannot guess as to whether there exists any good cause
for flouting its Order.  Therefore, all other pending matters are **DISMISSED
WITH PREJUDICE.**

### III. Conclusion

     Having considered all pending motions, the Court shall enter a final
partial judgment as follows: the widow's interest in the renewal terms of
the 39 songs shall be awarded to the Peer International Corporation;
partial summary judgment shall issue on the infringement claims in favor
of the Peer International Corporation and against the LAMCO Parties in the
amount of $29,250, as well as the solicited injunctive relief; a default
judgment shall issue in favor of PCUSA and against ACEMLA in the amount of
$27,124; a final partial judgment shall issue in favor of the Special
Master and against the LAMCO Parties in the amount of his outstanding
compensation; and a judgment for attorney fees shall issue in favor of
ASCAP and against the LAMCO Parties in the amount of $69,220.25, plus costs

as taxed by the Clerk of Court.  Having denied without prejudice the Peer Parties' motion for costs and fees, and having authorized the other prevailing parties to submit applications for costs and fees--these shall be submitted within the next 10 days.

All other been claims having been denied, voluntarily dismissed, or involuntarily dismissed, a final partial judgment shall issue dismissing with prejudice Civil Nos. 96-2312 (PG), 97-2356 (PG), 97-2875 (PG), 98-1597 (PG) and 00-1618 (PG), and dismissing without prejudice Docket No. 17, the antitrust counterclaim filed by Isabela Broadcasting, Kelly Broadcasting, Bestov Broadcasting, and VI-MAN Broadcast in Civil No. 96-2312 (PG).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 26, 2005.


S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE